LHT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILED
ASHEVILLE, N.C.
JUL - 6 2004
U.S. DISTRICT COURT
W. DIST. OF N.C.

JERRY TRULL, et al., )
)
) Plaintiffs )
) Civil Action No.: C 1:02-CV-243 C
v. )
) Hon. Lacy H. Thornburg
DAYCO PRODUCTS, INC., et al., )
)
) Defendants. ) **CLASS ACTION**
)

## PLAINTIFFS' TRIAL BRIEF

Pursuant to section IV.B.(f) of the Court's May 28, 2003 Pretrial Order and Case Management Plan and the Court's direction at the June 29, 2004 final pretrial conference, plaintiffs submit the following Trial Brief, limited to the major questions of law controlling the course of the trial and to the anticipated evidentiary issues that may arise at the trial.

A.  **Major Questions of Law Governing the Plaintiffs' Claims**

1.  Counts One and Three (LMRA § 301)

a.  Merits. The Court has ruled that the controlling question of law on Counts One and Three is what the Company and the Union intended in their collectively bargained agreements.[1] "In determining whether an employer's obligation to provide benefits to its retirees or their surviving spouses continues beyond the expiration of the collective bargaining

---

[1] Pursuant to a stipulation of the parties approved by the Court on February 13, 2004, plaintiffs are not required to present any evidence at trial that defendant Mark IV Industries should be held liable for actions taken by defendants Dayco Products, LLC, or its predecessor Dayco Products, Inc. on the basis of alter ego or piercing the corporate veil. This stipulation does not affect the trial of claims asserted against Mark IV directly. Accordingly, except as necessary, we do not distinguish in this submission between the various defendants.

agreement, [courts] look to the parties' intent as expressed in their agreement." *Keffer v. H.K. Porter, Inc.*, 872 F.2d 60, 62 (4th Cir. 1989). The Court has determined that the relevant contract language is ambiguous, and that extrinsic evidence is necessary to prove the intent of the agreements. *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 546 (7th Cir. 2000). We address the kinds of evidence that are admissible for this purpose in Part B, below.

    b.    <u>Relief.</u> Under the LMRA, plaintiffs are entitled to relief necessary to make them whole for defendants' breach of the insurance agreements. *Bowen v. United States Postal Serv.*, 459 U.S. 212, 222 (1983). They are entitled to:

(i) a declaration that they are entitled to vested lifetime medical benefits under the program of benefits that was in effect when each of them retired, without caps on defendants' contribution for such benefits (except as premiums were specifically authorized by, or the jury finds that caps were intended to apply under, the agreement in effect when the individual retired);

(ii) an order of restitution of all premiums paid by class members to maintain their medical insurance for themselves and their dependents in excess of the amounts described in (i);

(iii) damages or restitution of amounts paid to obtain substitute medical insurance[2];

---

[2] Pursuant to a stipulation approved by the Court on February 13, 2004, the parties agreed that to the extent class members lost coverage provided by defendants as a result of nonpayment of premiums, plaintiffs may if they prevail present claims for the cost of medical treatment to defendants or their carrier "as if the coverage had been in effect when the expenses were incurred." Stipulation Regarding Damages Proofs ¶5. Accordingly, plaintiffs do not seek an order of restitution for specific costs of medical treatment incurred by individual class members, but seek an order for retroactive reinstatement of the coverage, with payment of claims as if the class member had been covered at the time the medical services were provided.

2

(iv) a permanent injunction enjoining defendants from charging any premiums that were not provided by the contract in effect when each class member retired, and from otherwise reducing benefits.

*See generally Galindo v. Stoody*, 793 F.2d 1502, 1517 (9th Cir. 1986) (under LMRA § 301, plaintiffs to be compensated for loss of benefits provided under a collective bargaining agreement, including actual expenses incurred for substitute medical coverage).

2. Counts II and IV (ERISA)

a. Merits. Counts II and IV present ERISA claims parallel to the LMRA § 301 claims in Counts I and III, respectively. Because the ERISA plans in question, on which the ERISA claims rest, were collectively bargained, the same standard applies to their enforcement under ERISA as under Section 301. One of the duties of an ERISA fiduciary is to "discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV [of ERISA]." ERISA § 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D). In this case the document governing the plan was a collectively bargained agreement. Defendants administering the plan are required to follow the terms of the collectively bargained agreement unless they are inconsistent with ERISA. Here the collectively bargained plan grants rights that ERISA by itself would not require, but such rights are perfectly compatible with ERISA.

b. Relief. Pursuant to ERISA § 502(a)(1)(B), plaintiffs are entitled to recover benefits due them under the relevant insurance agreements, are entitled to enforce their rights under the terms of the agreements, and are entitled to clarify their rights under the agreements. 29 U.S.C. § 1132(a)(1)(B). In addition, pursuant to ERISA § 502(a)(3), plaintiffs are entitled to enjoin defendants' practices to the extent they violate the terms of the insurance agreements, and

3

to obtain other appropriate equitable relief necessary to fully enforce the terms of the insurance agreements. 29 U.S.C. § 1132(a)(3)(A), (B)(ii). *See, e.g., Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 398 n.5 (2002); *Webb v. GAF Corp.*, 936 F. Supp. 1109, 1126 (N.D.N.Y. 1996); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255 (3d Cir. 1995); *UIU Severance Pay Trust Fund v. Local Union No. 18-U*, 998 F.2d 509 (7th Cir. 1993).[3] Plaintiffs also are entitled to reasonable attorneys' fees under ERISA § 502(g)(1). *See Denzler v. Questech, Inc.*, 80 F.3d 97, 103-05 (4th Cir. 1996).

3. Counts V and VI (Change in treatment of prescription copayments)

a. Merits. Counts V and VI allege a violation of the collectively bargained plan applicable to class members retiring under the 1995 Agreement, beginning in 2000 when defendants changed the terms of that Agreement by refusing to take account of prescription co-payments in applying the annual out-of-pocket maximums. The issue at trial will be whether the pre-2000 practice was a contractual term, as plaintiffs contend, or was just a gratuitous practice that Defendants were free to change.

b. Relief. As relief under Counts V and VI, plaintiffs who retired pursuant to the 1995 Agreement are entitled to (i) damages or restitution of all amounts paid by members of Subclass B in excess of their annual out-of-pocket maximums and all amounts paid for prescription co-payments after the maximums were satisfied; and (ii) a permanent injunction enjoining defendants from refusing or failing to count prescription co-payments toward out-of-

---

[3] Certain, but not all, relief sought under ERISA § 502 and LMRA § 301 is identical, and plaintiff do not seek a double recovery. To the extent that particular relief is awarded pursuant to plaintiffs' LMRA claims—*e.g.*, damages or restitution requiring defendants to refund any premiums plaintiffs had paid to maintain health care benefits—that relief need not be awarded again on the ERISA claims.

4

pocket maximums, and from refusing or failing to pay 100% of the cost of prescription drugs after the annual out-of-pocket maximums are satisfied.

4. Count VII (Breach of Fiduciary Duty)

a. Merits. The Court determined in the June 21, Order that defendant Mark IV is a fiduciary as the term is defined by ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), when it selects the carrier that provides benefits under the collectively bargained 1995 Plan and negotiates rates for those benefits. In exercising these discretionary functions, Mark IV must act:

> solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
>   (i) providing benefits to participants and their beneficiaries;
>   (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

ERISA § 404(a), 29 U.S.C. § 1104(a). The duty requires the administrator fiduciary to be diligent and prudent in selecting and monitoring the service provider and negotiating over premium rates, to ensure that the interests of the participants and beneficiaries are adequately protected. *See Liss v. Smith*, 991 F. Supp. 278, 300 (S.D.N.Y. 1998); *see also Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1169 (D.C. Cir. 1994). The Court is not required to defer to Mark IV's exercise of discretion in making this fiduciary decision because (a) the fiduciary act here was defendant Mark IV's *process* in selecting the benefit provider; and/or (b) Mark IV's financial incentive to select a benefit provider that is more expensive, leading some participants to drop coverage because of their inability to pay amounts above the cap, creates a conflict in its decisionmaking. *See*

5

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989); *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 86-87 (4th Cir. 1993).

 b. <u>Relief.</u> Under ERISA § 502(a)(3), plaintiffs are entitled to injunctive and other appropriate equitable relief for Mark IV's breach of its fiduciary duties. Such relief includes:

- (i) an order requiring defendants to retroactively reinstate insurance coverage for any plaintiff who lost insurance coverage on account of an inability to pay the excessive premiums charged,

- (ii) a permanent injunction preventing defendants from imposing on Subclass B plaintiffs any premiums for health benefit coverage until and unless defendants comply with their fiduciary obligations to negotiate prudently for the best-priced appropriate health coverage, *see generally Laborers Benefit Funds-Detroit & Vicinity v. Northwest Concrete & Constr., Inc.*, 640 F.2d 1350, 1352-53 (6th Cir. 1981);

- (iii) an order requiring defendants to restore to Subclass B plaintiffs any amounts paid to defendants as premiums that would not have been paid but for defendant Mark IV's breach of its fiduciary duty, and to order defendants to disgorge any monies saved as a consequence of any plaintiff who was forced to drop coverage as a result of defendants' breach, *see Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993); *In re Unisys Corp.*, 57 F.3d at 1269; and

- (iv) reasonable attorneys' fees under ERISA § 502(g)(1).

**B. Statute of Limitations**

1. <u>Counts I through VI</u>. Defendants argue that the appropriate statute of limitations for all claims except Count VII is three years, because that is the period fixed by North Carolina for

6

breach of contract cases, *see Wise v. Dallas & Mavis Forwarding Co.*, 753 F. Supp.601, 606 (W.D.N.C. 1991), and both ERISA and the LMRA borrow the most analogous state law statute of limitations, *see Dameron v. Sinai Hosp. of Baltimore*, 815 F.2d 975, 981 (4th Cir. 1987); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). They also argue that the cause of action accrued when the Company first announced that it had "imposed caps" (in 1992), and that the plaintiffs' claims were time barred before 2001, when they were filed. There are several independent reasons why the statute of limitations does not bar Counts One through Six.

    a. <u>The Statute of Limitations is a 15-Year Period Supplied by Ohio Law.</u> The transfer of this case under 28 U.S.C. § 1404(a) from Ohio to North Carolina did not affect the limitations period to be applied. "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). The limitations period to be borrowed from state law for a federal claim is the limitations period of the forum where the case was first filed. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 919 (D.D.C. 1994). Permitting a transfer to affect the limitations period would convert a transfer that is supposed to be "[f]or the convenience of the parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), into a move that changes the outcome of the case solely because the defendant can find a forum with a shorter statute of limitations to which the case can be transferred.

Ohio's statute of limitations for enforcement of written contracts is 15 years, and it is borrowed by the federal courts in Ohio for lawsuits seeking to enforce benefit promises. *See Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 195 & n.4 (6th Cir. 1992). Applying that statute in this case could not possibly bar plaintiffs' claim.

7

b. <u>In the Alternative, Plaintiffs' Claims Did not Accrue Until 1999, at the Earliest.</u>

A federal cause of action does not accrue until the "claimant knows, or should know through an exercise of reasonable diligence, of the acts constituting the alleged violation." *Alcorn v. Burlington N. R.R. Co.*, 878 F.2d 1105, 1108 (8th Cir. 1989). Under certain circumstances, an ERISA cause of action can accrue even before a claim for benefits is wrongfully denied, but only where "there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y]." *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330-31 (8th Cir. 1998) (quotation omitted, emphasis added). This rule of a clear anticipatory repudiation starting the statute of limitations to run does not, however, apply to situations in which the nonbreaching party has fully performed his or her obligations under the agreement. 4 *Corbin on Contracts* § 989, p.967.

2. <u>Count VII.</u> The statute of limitations for the alleged breach of fiduciary duty under ERISA is the earlier of (i) six years after the date of the last action which constituted a part of the breach or (ii) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. ERISA § 413, 29 U.S.C. § 1113. In this matter, actions constituting a part of the breach or violation occurred as recently as late 2003, when Mark IV failed to negotiate with UHC for lower premium rates for the year 2004 and instead passed on the full rate increases requested by UHC to Subclass B. If Defendants wish to establish an earlier date of accrual of plaintiffs' claims in Count VII, it is their burden to prove when the plaintiffs had actual knowledge of Mark IV's failure to make diligent efforts to negotiate lower UHC rates.

8

# ANTICIPATED EVIDENTIARY ISSUES

A. **Evidence Plaintiffs Will Introduce to Demonstrate Intent of Parties to Agreements**

Many types of evidence are appropriate to show what the agreements meant. *Rossetto*, 217 F.3d at 546. Evidence of the subjective understanding of the Company is relevant to the inquiry. *Id.* at 547. Such evidence includes:

(1) the parties' past practice under the agreements,

(2) statements by either party regarding the meaning of the agreements, *id.* at 546-47; *Keffer*, 872 F.2d at 62; *Webb*, 936 F. Supp. at 1123; 3 A. Corbin, *Corbin on Contracts* § 579 (1960);

(3) evidence of other provisions in the same or related agreements that suggest the parties' intent, *see United Paperworkers Int'l Union*, 908 F.2d at 1256; *Maurer*, 212 F.3d at 915;

(4) evidence of any "fundamental unstated assumptions on the basis of which, as both of them well know, the agreement is being made," even if that assumption is omitted from the written agreement; 3 *Corbin on Contracts* §§ 573, 579, 590 (1960).

Plaintiffs intend to introduce evidence of the types described above, including statements (written or oral) of Dayco company officials and employees who negotiated and administered the insurance agreements, made in the course of carrying out such duties. Such evidence is admissible nonhearsay under Fed. R. Evid. 801(d)(2)(C) as "a statement by a person authorized by the party to make a statement concerning the subject," and/or under Fed. R. Evid. 801(d)(2)(D) as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See, e.g., Michaels v. Michaels*, 767 F.2d 1185, 1201 (7th Cir. 1985); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir. 1982).

9

Plaintiffs intend to offer statements by Union officials and by plaintiffs that were made to defendants and that defendants adopted by their silence, *see* Fed. R. Evid. 801(d)(2)(B); *United States v. Tedder*, 801 F.2d 1437, 1451 (4th Cir. 1986), or by acts of compliance with plaintiffs' understanding, *see generally*, 5 *Weinstein's Federal Evidence* § 801.31[3][b] (2004).

## B. In Limine Exclusion of Certain Anticipated Defendants' Evidence

### 1. Unilateral Summary Plan Descriptions

Defendants have included on their exhibit list Summary Plan Descriptions ("SPD") that were created unilaterally by Defendants in 1999, after the plant had closed. Defendants added to those SPDs (unlike all of the collectively bargained documents) language asserting that the employer reserved the right unilaterally to amend or terminate benefits with respect to all agreements. In the Memorandum of Opinion denying Defendants' first motion for summary judgment, this Court ruled that such "after the fact" material is not probative of any issue in the case, because the SPD language "has not been shown to be conclusively tied to any collectively bargained agreement." Mem. Order Nov. 18, 2003, at 10 n.6; *see also International Ass'n of Machinists v. Masonite Corp.*, 122 F.3d 228, 233 (5th Cir. 1997). Plaintiffs will ask the Court to rule at trial that these "after the fact" SPDs may neither be admitted into evidence nor used to question any witness because the SPDs are not probative on any issue and may confuse witnesses or the jury. *See generally* Fed. R. Evid. 401, 403.

### 2. Memorandum Prepared by Jennifer Williamson for USWA Research Department

Defendants have also listed as an exhibit an October 5, 1999 memorandum written by Jennifer Williamson, an employee in the United Steelworkers of America ("USWA") Research, Benefits & Contracts Department, as evidence that plaintiffs retiring under the 1995 Agreement were "not disputing the cost caps nor the [monthly premium] charges." This statement in the

Williamson memo is inadmissible hearsay that does not qualify for any hearsay exception. *See* Fed. R. Evid. 801, 802. Although the memorandum as a whole may be a "business record" under Fed. R. Evid. 803(6), statements within it that were not recorded by a person with personal knowledge of the fact or information to be proved are hearsay within hearsay, *e.g.*, *Cameron v. Otto Bock Orthopedic Indus., Inc.*, 43 F.3d 14, 16-17 (1st Cir. 1994) (medical report that contained information obtained from patients did not qualify as business record), and cannot be admitted unless Defendants present another exception to the hearsay rule for each level of hearsay. *See Bemis v. Edwards*, 45 F.3d 1369, 1374 (9th Cir. 1995). Inasmuch as Ms. Williamson did not record the source of the information that she summarized in the memo, no such second-level exception can be established.

## C.     Plaintiffs' Expert Witnesses

Plaintiffs intend to present evidence by two expert witnesses pursuant to Fed. R. Evid. 702: (1) testimony by Dr. Arthur Eliot Berkeley regarding the interpretation of the operative agreements in this case based on labor-management collective bargaining practices and on principles of interpretation developed in the collective bargaining field; (2) testimony by Stuart Wohl regarding the standard industry practice for health benefit plan sponsors and plan administrators in renewing group health benefit contracts.[4]

Fed. R. Evid. 702, which was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), permits experts to testify regarding "technical or other specialized knowledge" if such testimony will assist the trier of fact. Dr. Berkeley, who in a lengthy career served as a bargaining representative of both labor and of management, taught

---

[4] Mr. Wohl will also present, solely for the convenience of the jury and the Court, a calculation of what the cap amounts under the 1995 Agreement would be if 5% increases were applied. This is not opinion testimony and does not have to comply with *Daubert*.

11

Case 1:02-cv-00243-LHT    Document 131    Filed 07/06/04    Page 11 of 12

academic courses related to collective bargaining, and served for many years as an arbitrator resolving disputes under collective bargaining agreements. He has a wealth of specialized knowledge of the practice of collective bargaining, the spectrum that ranges from one extreme of spelling out all provisions in detailed language to the opposite extreme of leaving many agreed terms unstated, and how the parties go about resolving questions that arise under their collective bargaining agreements. That knowledge may assist the jury in understanding the agreements in question here. Mr. Wohl has extensive experience in health insurance underwriting and advising plan sponsors in their efforts to obtain lower prices from health insurers. His knowledge may assist the Court in determining whether Mark IV failed to make diligent efforts to obtain lower premium increases from UHC, as alleged in Count Seven of the Second Amended Complaint.

* * * * *

Detailed proposed jury instructions and proposed findings of fact and conclusions of law consistent with the foregoing are being filed in connection with this submission.

Respectfully submitted,

Julia Penny Clark
Maryann Parker
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C. 20005-2207
(202) 842-2600

C. Frank Goldsmith, Jr.
Goldsmith, Goldsmith & Dews, P.A.
P.O. Box 1107
Marion, North Carolina 28752

*Attorneys for Plaintiffs*

Dated: July 6, 2004