LHT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILED
ASHEVILLE, N. C.
JUL - 6 2004
U.S. DISTRICT COURT
W. DIST. OF N. C.

JERRY TRULL, et al.,                    )
                                        )
                    Plaintiffs          )   Civil Action No.: C 1:02-CV-243
                                        )
        v.                              )
                                        )   Hon. Lacy H. Thornburg
DAYCO PRODUCTS, INC., et al.,           )
                                        )
                    Defendants.         )   **CLASS ACTION**

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS



132

## 1. Preliminary Instructions

You have now been sworn as the jury to try this case, and we are about to begin the trial. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me explain some of the most common terms to you. A party who brings a lawsuit is called a plaintiff. In this action, a group of over 800 individuals, certified by me as a "class," are the plaintiffs. Six of those plaintiffs have been designated as representatives of the plaintiff class. They are Jerry Trull, Don Henson, Floyd Sutton, Earl Johnson, Roderick Rogers and Joyce Riggs.

A party being sued is called a defendant. In this case, there are four defendants. They include the company Dayco Products, LLC, or Dayco, and Mark IV Industries, Inc., or Mark IV, the corporation which is the owner of Dayco. Dayco Products Inc. Group Medical Plan, or the Dayco Plan, and the Mark IV Industries Inc. and Subsidiaries Group Welfare Benefit Program, or the Mark IV Plan, which is the successor to the Dayco Plan, are also defendants in this action.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted. When I say "admitted into evidence" or "received in evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence. You should avoid reading any news articles that might be published about the case, and you should avoid watching or listening to any television or radio comments about the trial.

The trial lawyers are not allowed to speak with you during the case. When you see them at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 101.01)*

1

## 2. General Instructions: Applicable Law

Now that you have heard the evidence and the arguments, it is my duty to instruct you about the applicable law. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. You are not to be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law whether you agree with it or not.

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Likewise, do not consider any statement that I have made in the course of trial or make in the instructions as an indication that I have any opinion about the facts of this case. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. You took an oath promising to do so at the beginning of the case.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 103.01)*

2

### 3. Deliberations: General Rules

You must follow the following rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone – including me – how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.

Fifth, and finally, the verdict form is simply the written notice of the decisions that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 103.50)*

### 4. "If You Find" or "If You Decide"

When I instruct you that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean that you must be persuaded by a preponderance of the evidence.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 104.04)*

4

### 5. "Preponderance of the Evidence" – Defined

"Establish by a preponderance of the evidence" means to prove that something is more likely than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proven by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 104.01)*

5

### 6. "Direct" and "Circumstantial" Evidence – Defined

Generally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 104.05)*

6

## 7. Evidence in the Case

Statements and arguments of counsel are not evidence in this case. When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

The Court may take judicial notice of certain facts or events. When the Court declares that it will take judicial notice of some fact or event, the jury must, unless otherwise instructed, accept the Court's declaration as evidence, and regard as proved the fact or event which has been judicially noticed.

Unless you are otherwise instructed, the evidence in the case always consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.

Any evidence as to which an objection was sustained by the Court, and evidence ordered stricken by the Court, must be entirely disregarded.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 103.30)*

7

### 8. Questions not Evidence

If a lawyer asks a witness a question which contains an assertion of fact, you may not consider the assertion as evidence of the fact. The lawyers' statements are not evidence. Only the witness's answers are evidence.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 103.34)*

8

## 9. Witnesses

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it. You may, in short, accept or reject the testimony of any witness in whole or in part.

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness may be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary. In fact, the testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for proof of any fact, and would justify a verdict in accordance with the testimony, even though a number of witnesses may have testified to the contrary, if after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of that witness.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instructions Nos. 105.01; Devitt, Blackmar, and Wolff, Federal Jury Practice and Instructions (4th ed. 1992), § 71.01)*

### 10. Not Required to Accept Uncontradicted Testimony

You are not required to accept testimony, even though the testimony is uncontradicted and the witness is not impeached. You may decide, because of the witness' bearing and demeanor, or because of the inherent improbability of his or her testimony, of for other reasons sufficient to you, that such testimony is not worthy of belief.

*(Based on  Devitt, Blackmar, and Wolff, <u>Federal Jury Practice and Instructions</u> (4th ed. 1992), §73.12)*

## 11. Impeachment

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony. A witness may also be discredited or impeached by evidence that the character of the witness for truthfulness is bad.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown to knowingly have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other areas and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally done, and not done because of mistake or accident or other innocent reason.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether the misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant fact.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instructions Nos. 105.04 and 105.06)*

11

## 12. Impeachment – Bad Reputation for Truth and Veracity

A witness may be discredited or impeached by evidence that the character of the witness for truthfulness is bad. If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 105.06)*

## 13. Expert Witnesses

The rules of evidence ordinarily do not permit witnesses to testify as to opinions. An exception to this rule exists for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses may state their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 104.40)*

13

### 14. "Inferences" – Defined

You are to consider only the evidence in the case. However, you are not limited to the statement of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experiences.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 104.20)*

### 15. Use of Depositions as Evidence

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 105.02)*

## 16. Consideration of the Evidence – Corporate Party's Agents and Employees

A corporation, or other corporate entity, may act only through natural persons as its agents or employees. In considering the claims asserted by plaintiffs, you are instructed that the employees, former employees or other agents of defendant corporate entities can bind the entity by their acts, omissions, and declarations, made while acting within the scope of their authority delegated to them by their corporations or other corporate entities or within the scope of their duties as employees of the corporation or the corporate entity.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 103.31)*

## 17. Agency

An agent is a person who is employed by, or otherwise performs services for, another person (including a corporate entity) under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), at 229 (quoting Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 6.4 (1997)); Restatement (Second) of Torts, § 1)*

## 18. LMRA Section 301 Action Generally

Plaintiffs bring claims for injunctive relief and damages under Section 301 of the Labor Management Relations Act of 1947, a federal law that provides for the enforcement of rights created pursuant to "contracts between an employer and a labor organization representing employees in an industry affecting commerce." The rules that apply to traditional contracts are used to interpret contracts governed by Section 301 to the extent that they do not conflict with the federal labor policies embodied in the Labor Management Relations Act.

The parties have stipulated that all of the agreements at issue in this case, which include contracts entitled "Collective Bargaining Agreement," "Pension Agreement," "Insurance Agreement," "Employee Benefits Agreement," "Group Benefits Agreement," and "Supplemental Unemployment Benefits Agreement," are contracts under Section 301 of the Labor Management Relations Act.

Any "side letters," "letters of understanding," or "letters of intent" reached between Local 277 and Dayco, as well as the 1992 Memorandum of Agreement, are also contracts under Section 301.

See 29 U.S.C. § 185(a); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456-57 (1957); International Union of Operating Eng'rs Local 571 v. Hawkins Constr. Co., 929 F.2d 1346, 1349 (8th Cir. 1991).

## 19. Collective Bargaining Agreements—Defined

"Collective bargaining" means a process of negotiation between an employer and a union that represents employees. In collective bargaining, the employer and the union are required to negotiate over the wages, hours, and working conditions of current employees – including benefits that may be paid to those employees in the future when they retire. (Those are called "mandatory subjects of bargaining.") The employer and the union may bargain (if both are willing) about benefits for people who have already retired, but neither party can require the other one to discuss those benefits and the union cannot strike over benefits for people who have already retired. (These are called "permissive subjects of bargaining.")

A "Collective Bargaining Agreement" is a contract between an employer and a union that results from the process of collective bargaining. All of the contracts between Local 277 and Dayco are collective bargaining agreements. Collective bargaining agreements usually last for a period of time agreed between the union and employer which is indicated in a general termination clause in the agreement. At the end of that time, typically the union and employer each propose changes in some of the terms of the agreement. The union, for example, may ask for higher wages or more holidays for current employees, and the employer may ask for different work rules, or that employees contribute to their medical insurance premiums. If the union and employer reach an agreement on those changes, they will normally incorporate those changes into the new collective bargaining agreement and sign it. If they do not reach an agreement, there may be a strike until they find a compromise that both sides accept.

The general termination clause in a collective bargaining agreement does not necessarily mean that every obligation that binds the employer under the agreement is terminated. The union and the employer may agree that certain obligations continue after the rest of the agreement is terminated. Such an agreement for continuation of certain obligations may be stated expressly in the collective bargaining agreement, or it may be an "implied" term that is not stated in so many words.

See Litton Fin. Printing v. NLRB, 501 U.S. 190, 203 (1991); Joy v. Maurer Techs., Inc., 212 F.3d 907, 918 (6th Cir. 2000); United Paperworkers Int'l Union v. Champion Int'l, 908 F.2d 1252, 1256 (5th Cir. 1990); International Ass'n of Machinists v. Masonite Corp., 122 F.3d 228, 233 (5th Cir. 1997); Weimer v. Kurz-Kasch, Inc., 773 F.2d 669, 676 (6th Cir. 1985).

19

## 20. Accrued or "Vested" Rights -- Defined

If the union and the employer agree that employees or retired employees will have rights that continue after the collective bargaining agreement expires, and that cannot later be changed, those rights may (or may not) be called "vested" rights. A "vested" right is a right that becomes fixed when the employee has met all of the conditions for that right, and that cannot be changed at a later date. There is no particular formula of words that has to be used in order to create a "vested" right.

See Litton Fin. Printing v. NLRB, 501 U.S. 190, 207 (1991); Joy v. Maurer Techs., Inc., 212 F.3d 907, 918 (6th Cir. 2000); United Paperworkers Int'l Union v. Champion Int'l, 908 F.2d 1252, 1256 (5th Cir. 1990); International Ass'n of Machinists v. Masonite Corp., 122 F.3d 228, 233 (5th Cir. 1997); Weimer v. Kurz-Kasch, Inc., 773 F.2d 669, 676 (6th Cir. 1985).

## 21. Nature of Plaintiffs' Claims

The Plaintiffs claim that Dayco was contractually obligated to continue providing medical insurance to retired employees for their lifetimes under the terms of the collective bargaining agreement that was in effect when each individual retired. Plaintiffs claim that the series of collective bargaining agreements created rights to such insurance that continued after each of those agreements terminated. Defendants deny those claims and argue that all rights within each collective bargaining agreement terminated when that particular agreement terminated.

Specifically, Plaintiffs claim:
*. That Dayco is required to continue providing medical insurance to all the Subclass A plaintiffs who retired before July 1, 1992, on at least the same terms that were provided in the collective bargaining agreement that was in effect when each individual retired. Plaintiffs contend that there are no "caps" on the amount that Dayco must pay to maintain medical insurance for those retirees, and that they cannot be charged any premiums for their medical insurance.
*. Defendants deny that claim and argue that no retiree had any contractual right to medical insurance after the termination of the collective bargaining agreement under which that individual retired, and that Dayco could charge retirees premiums for that insurance or even cut off their insurance entirely once the agreement had terminated.

Plaintiffs also claim:
*. That the 1992 Memorandum of Agreement, also referred to as the "Addendum," did not authorize Dayco to set "caps" on what it would pay for those members of Subclass A who retired between July 2, 1992, and July 30, 1995 and elected, under the terms of that Memorandum of Agreement, to be treated as "pre-Addendum retirees."
*. Defendants deny that claim and argue that the Memorandum of Agreement itself expired on May 1, 1995, and that Dayco had the right to change the terms of insurance coverage for all retirees once it expired, including setting a "cap" on what it would pay for the coverage of individuals who had exercised their right to be treated as pre-Addendum retirees.

Plaintiffs also claim:
*. That any person who retired between after July 2, 1992 would not be affected by the "caps" stated in the 1992 Memorandum of Agreement because Local 277 and Dayco expressly agreed that the Memorandum of Agreement would not apply if the plant were closed.
*. Defendants deny that claim and argue that the 1992 Memorandum of Agreement itself expired on May 1, 1995, and that the promise that the Memorandum of Agreement would not apply in the plant closed was only good until that date, leaving Dayco free to set caps on all retirees if the plant closed after May 1, 1995 (which it did).

Plaintiffs also claim:
*. That while the 1995 Agreement stated that there would be a "cap" on how much Dayco would be required to pay to continue medical insurance for employees who would retire while that Agreement was in effect (this group is Subclass B), Local 277 and Dayco never intended for any retirees to be affected by that cap.

21

\*. Defendants deny that claim and argue that Union and the Company understood that retirees would actually have to pay for the amount of their insurance premiums that exceeded the caps stated in the 1995 Agreement.

Plaintiffs also claim:
\*. That while the 1995 Agreement stated that there would be a "cap" on how much Dayco would be required to pay to continue medical insurance for employees who would retire while that Agreement was in effect (this group is Subclass B), Local 277 and Dayco agreed that this "cap" would increase by 5% during each year of the Agreement, and that it also would be increased in accordance with cap increases at other Dayco facilities. Plaintiffs also claim that Dayco was bound by a rule in the 1995 Agreement to the effect that prescription drug copayments would be counted toward the annual maximum that retirees pay "out of pocket" before their medical plan begins to pay 100% of an additional costs.
\*. Defendants deny those claims and argue that Dayco was not required to increase the "caps" by 5% each year and that Dayco was free to stop counting prescription copayments toward the annual out-of-pocket maximum whenever they chose.

Finally, Plaintiffs claim:
\*. That Defendant Mark IV Plan did not act diligently in negotiating the low-cost premiums for the members of Subclass B despite the fact that they were under duties do so.
\*. Defendants deny that claim and argue that the Mark IV Plan did take reasonable steps to negotiate on behalf of the members of Subclass B, and therefore met its duties to the Plaintiffs. (This claim is one for the Court. It is not an issue that the jury is required to decide.)

## 22. Elements of Contract Formation; Intent

A contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty. To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract.

The manifestation of mutual assent means that both parties must intend to be bound. That intent may be expressed wholly or partly by written or spoken words or by other acts or conduct. An internal or unexpressed intention not to be bound is ineffective.

Because intent, including intent to be bound, is seldom susceptible to direct proof because it related to a person's state of mind, the law presumes that a person intends the natural and probable consequences of that person's acts.

The "intent" of parties to a contract does not include some secret meaning that one party has not expressed to the other. It is, instead, what each party had a reason to know the other party understood.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000)), Instruction No. 126.01);* See Webb v. GAF Corp., 936 F. Supp. 1109, 1123 (N.D.N.Y. 1996); 3 A. Corbin, Corbin on Contracts, *§ 579 (1960).*

### 23. Ambiguity -- Defined

The Court has already ruled that the language of the contracts between the Union and the Company concerning retiree health benefits is "ambiguous" regarding the Union and Company's intent regarding retiree benefits. The term "Ambiguous" means simply that reasonable people can interpret the language more than one way. When contracts are "ambiguous," it is the function of the jury to decide what the parties to those agreements intended. In this case, therefore, it is your function to decide what Local 277 and Dayco intended when they entered into each of the disputed contracts.

See Rossetto v. Pabst Brewing Co., Inc., 217 F.3d 539, 542-53 (7th Cir. 2000); Casey v. Lifespan Corp., 62 F. Supp. 2d 471, 480 (D.R.I. 1999).

### 24. Parol Evidence

I have determined that the written contracts in evidence in this case were not the entire agreement between the parties. A contract may consist of both written and oral promises. The oral portions of the agreement may be enforced and damages awarded for breach of the agreement, just as though those portions had appeared in the written agreement.

The determination of whether there was an oral promise depends on proof of mutual agreement, just as a written contract does. There must be an offer by one side that is accepted and agreed to by the other side. It is for you to determine what additional provisions there were in the parties' agreements, and whether there has been a breach of those agreements.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), Instruction No. 126.20)*

25

## 25. Proof of Intent

In deciding what Local 277 and Dayco intended in their contracts, you may take into consideration all of the evidence that you have heard or seen. You may find that there is no single fact that is sufficient by itself to determine what their intent was, and it is for you, the jury, to decide how much weight to give to any of these facts.

The factors that you may consider include the following:

- The words that parties use in their agreements are strong evidence of what they intended.
  See Keffer v. H.K. Porter Co., Inc, 872 F.2d 60, 62 (4th Cir. 1989)

- All of the provisions in an agreement should be considered as a whole. You should try to give meaning to every part of the agreement. For example, in determining what the Union and the Company intended with regard to the duration of benefits for the retiree, you should consider the meaning of contract language used to define the duration of the surviving spouses' entitlement to benefits: "until death or remarriage." Terms in related agreements between the same parties may also be considered as evidence of the parties' intent.
  See Keffer v. H.K. Porter Co., 872 F.2d at 62; United Paperworkers Int'l Union v. Champion Int'l, 908 F.2d 1252, 1256 (5th Cir. 1990); Maurer v. Joy Techs., Inc., 212 F.3d 907, 915 (6th Cir. 2000).

- You may consider differences in how the agreement provides for termination of benefits for active employees, compared to what it provides for benefits for retirees.
  See Keffer v. H.K. Porter Co., 872 F.2d at 62-63.

- As in all contracts, you must construe the terms of the agreements in this case so as not to render any of those terms meaningless, and to avoid illusory promises. An "illusory" promise is one that appears to be worth something but on closer examination is meaningless. If one interpretation of the agreement would make a promise "illusory" and another interpretation would give it meaning, you may consider that the parties intended for their promises to be meaningful.
  See Webb v. GAF Corp., 936 F. Supp. 1109, 1119-20 (N.D.N.Y. 1996); Bonnell/Tredegar Indus., Inc. v. NLRB, 46 F.3d 339, 344 (4th Cir. 1995).

- You may consider the things that one party's representatives say, or do not say, to the other party during negotiations as evidence of what that party intended and understood. If one party expresses its understanding to the other party in negotiations, and the other party does not state any disagreement, you may conclude that the other party accepts that understanding as the intent of the agreement. Also, if the knowledgeable representatives of one party to the contract make statements outside of formal negotiations that express their understanding of what an agreement means, you may find those statements to be strong evidence of what that party intended.

26

See United Steelworkers of Am. v. Newman-Crosby Steel, 822 F. Supp. 862, 866 (D.R.I. 1993); Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 96 (3d Cir. 1992).

- If statements were made to individual employees by management representatives of Dayco whose responsibility included advising employees about their benefits, you may find those statements to be strong evidence of what Dayco intended.
  Keffer v. H.K. Porter Co., 872 F.2d at 64; Alexander v. Primerica Holdings, Inc., 967 F.2d at 96; International Union, United Auto., Aerospace and Agricultural Implement Workers of Am. & Its Local 784 v. Cadillac Malleable Iron Co., 728 F.2d 807, 809 (6th Cir. 1984).

- What the parties actually did under their agreements, especially if a practice was followed consistently for a long time and was known to both parties, may be the strongest evidence of all of what the parties intended. It is necessary to consider the practice, usage and custom related to the agreements.
  Keffer v. H.K. Porter Co., 872 F.2d at 62; Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir. 1993); Central States Pension Fund v. Kroger Co., 226 F.3d 903, 913 (7th Cir. 2000).

- In collective bargaining, the employees may agree to accept less in current wages in order to persuade the employer to promise future benefits in retirement. After those employees have retired, they have fully performed their part of the bargain and the employer is no longer required to negotiate about their benefits in retirement. For these reasons, you may wish to consider in your determination the nature of retiree benefits are, in a sense, status benefits which, as such, carry with them an expectation that they continue so long as the prerequisite status is maintained, and would not be linked to the duration of the contract that created them, but to the duration of the individuals' status as retirees.

  This is not to say that, standing alone, this factor or expectation would be sufficient to find an intent of the parties to create benefits that would continue after the collective bargaining agreements expired. However, this factor may, in your view, support other evidence of such intent that you find in the language of the agreements and in other evidence you have heard.
  See Keffer v. H.K. Porter Co., 872 F.2d at 64; Webb v. GAF Corp., 936 F. Supp. at 1121-22.

- You may also consider that after 1975 the law required an employer to provide summary plan descriptions to employees clearly stating the circumstances under which they could lose their benefits. In determining what Dayco believed were its rights and obligations under the agreements, you may consider whether Dayco clearly stated to employees after 1975 that their benefits could be terminated at any time after expiration of the collective bargaining agreement under which they retired.
  See 29 U.S.C. § 1022; Alexander v. Primerica Holdings, Inc., 967 F.2d at 96; United Steelworkers of America v. Newman-Crosby Steel, 822 F. Supp. at 866.

27

## 26. Repudiation of a Contract

A "repudiation" is a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give obligee a claim for damages for total breach of the contract.

Such a statement is not a repudiation unless it clearly and unmistakably conveys the obligor's intention to commit a breach.

See Restatement (Second) of Contracts § 250; Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330-31 (8th Cir. 1998) (citations omitted).

## 27. ERISA Fiduciary Breach Action (If Judge wishes to charge)

The Plaintiffs bring a claim that Defendant Mark IV breached its fiduciary duties to the members of Subclass B under the Employee Retirement Income Security Action of 1974, commonly known as ERISA. Specifically, Plaintiffs claim that Defendant Mark IV did not make a diligent effort to negotiate with insurance carriers to obtain the lowest premiums consistent with the negotiated 1995 plan design, and with quality of care.

The parties have stipulated that Defendant Mark IV is the "Plan Administrator" of the medical benefits plan provided to the retirees of Dayco who retired under the 1995 collective bargaining agreement. I have already ruled that Defendant Mark IV, as Plan Administrator, acted in a "fiduciary" capacity in negotiating with insurance carriers to implement the plan of medical benefits that was specified in the 1995 Agreement.

As an ERISA fiduciary, Mark IV is required to act prudently, diligently, and in the best interests of the plan participants and beneficiaries, that is, the members of Subclass B and their dependents. Mark IV's fiduciary responsibilities in this regard include the duties to design and conduct a thorough, impartial investigation of which insurance provider or providers can best serve the interests of those participants and beneficiaries, including efforts to negotiate with insurance carriers to obtain the lowest premiums consistent with the negotiated 1995 plan design, and with quality of care.

See ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B); Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 302 (5th Cir. 2000).

29

## 28. Damage Verdict

If you find that plaintiffs have failed to prove their claims of that defendants violated the agreements at issue in this case, then, of course, your verdict will be for defendants. On the other hand, if you find for plaintiffs on their breach of contract claims, you will then consider the issue of the amount of monetary damages to be awarded.

In that respect you should award plaintiffs the measure of money damages shown by a preponderance of the evidence to be fair and adequate compensation for such loss or damage, if any, that proximately resulted from the breach of contract. For damage to be the proximate result of the breach, it must be shown that, except for the breach, such damage would not have occurred.

Your verdict must be to compensate plaintiffs, not to punish defendants.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction Nos. 127.03, 126.64)*

30

## 29. Verdict Forms – Jury's Responsibility

Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

You have heard that the plaintiffs in this case are the representatives of a "class" and that this is a "class action." What that means is that you, the jury will decide the claims of all former Dayco retired employees and their dependents, not just the claims of the six individual plaintiffs.

You have also heard that the members of the class are divided into two different groups, called "subclasses." To reach your verdict, you will be asked to answer some questions regarding the claims that apply only to members of Subclass A or Subclass B. The subclasses are organized as follows:

- All people who retired from Dayco before July 1, 1992 are in Subclass A.
- All people who retired from Dayco after July 30, 1995 are in Subclass B.
- People who retired between July 1, 1992 and July 30, 1995, may be in either Subclass A or Subclass B depending on the choice they made under the 1992 Memorandum of Agreement. If they chose to be treated like "pre-Addendum retirees," they are in Subclass A. If they did not choose to be treated like "pre-Addendum retirees," they are in Subclass B.
- Surviving spouses are members of the subclass that their retirees would have been in if they were still alive.

*(Based on Kevin F. O'Malley, Jay E. Grenig, and William C. Lee, Federal Jury Practice and Instructions (5th ed. 2000), Instruction No. 106.07)*

31