LHT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

JERRY TRULL, et al., )
                            Plaintiffs ) Civil Action No.: C 1:02-CV-243

v. )

DAYCO PRODUCTS, INC., et al., ) Hon. Lacy H. Thornburg

                          Defendants. ) **CLASS ACTION**

**PLAINTIFFS' PROPOSED STATEMENT OF ISSUES**

# STATEMENT OF ISSUES

**Count One:**

1. Do you, the jury, find that members of Subclass A have a current contract right to receive for life the medical benefits described in the Insurance Agreement that was in effect when each person retired, as plaintiffs contend?

    ❑ Yes.

    ❑ No. We find that contract rights under the Insurance Agreements ended on termination of each Agreement, as defendants contend.

    **If you checked "Yes," answer question 2. If you checked "No," go to question 4 on page 2.**

2. Do you, the jury, find that the Company violated the contract rights of Subclass A by making them pay premiums after the plant closed (except for the $30 per month charged to persons retiring after May 2, 1994), as plaintiffs contend?

    ❑ Yes.

    ❑ No. We find that the Company had the right to change the terms of medical benefits by charging premiums in excess of "caps," as defendants contend.

    **If you checked "Yes," answer question 3. If you checked "No," go to question 4 on page 2.**

3. What damages do you find for Subclass A for this contract violation?

    **[Check A or B, but not both.]**

    ❑ A. We find damages for each member of Subclass A in an amount equal to the premiums that the Defendants charged (except for the $30 per month charged to persons retiring after May 2, 1994), for the entire time premiums were charged to that class member, plus interest.

    ❑ B. Other: _____.

1

**Count Three:**

4. Do you, the jury, find that members of Subclass B who retired between July 1, 1992 and May 1, 1995 (and who did not elect to be treated as "pre-Addendum retirees") have a current contract right to receive for life the medical benefits described in the 1990 Insurance Agreement, as plaintiffs contend?

    ☐ Yes.

    ☐ No. We find that contract rights under the 1990 Insurance Agreement ended when that agreement terminated, as defendants contend.

**If you checked "Yes," answer question 5. If you checked "No," go to question 7 on page 3.**

5. Do you, the jury, find that the Company violated the contract rights of these members of Subclass B by making them pay premiums after the plant closed (except for the $30 per month charged to persons retiring after May 2, 1994), as plaintiffs contend?

    ☐ Yes.

    ☐ No. We find that the Company had the right to change the terms of medical benefits by charging premiums in excess of "caps," as defendants contend.

**If you checked "Yes," answer question 6. If you checked "No," go to question 7 on page 3.**

6. What damages do you find for these members of Subclass B for this contract violation?

    **[Check A or B, but not both.]**

    ☐ **A.** We find damages for each member of Subclass B who retired between July 1, 1992 and May 1, 1995 (and who did not elect to be treated as a "pre-Addendum retiree") in an amount equal to the premiums that the Defendants charged (except for the $30 per month charged to persons retiring after May 2, 1994), for the entire time premiums were charged to that class member, plus interest.

    ☐ **B.** Other: _____.

**Count Three, continued:**

7. Do you, the jury, find that members of Subclass B who retired on or after May 1, 1995 have a current contract right to receive for life the medical benefits described in the 1995 Insurance Agreement, as plaintiffs contend?

    ❑ Yes.

    ❑ No. We find that contract rights under the 1995 Insurance Agreement ended when that agreement terminated, as defendants contend.

    **If you checked "Yes," answer question 8. If you checked "No," go to question 11 on page 4.**

8. Do you, the jury, find that the Union and the Company intended that the FASB caps in the 1995 insurance agreement would never result in premium charges to members of Subclass B, as plaintiffs contend?

    ❑ Yes.

    ❑ No.

    **If you checked "Yes," answer question 9. If you checked "No," go to question 11 on page 4.**

9. Do you, the jury, find that the Company violated the contract rights of these members of Subclass B by making them pay premiums in excess of FASB caps, as plaintiffs contend?

    ❑ Yes.

    ❑ No.

10. What damages do you find for these members of Subclass B for this contract violation?

    **[Check A or B, but not both.]**

    ❑ **A.** We find damages for each member of Subclass B who retired on or after May 1, 1995, in an amount equal to all of the premiums that the Defendants charged, for the entire time premiums were charged to that class member, plus interest.

    ❑ **B.** Other: _____.

11. Do you, the jury, find that the Union and the Company agreed in 1995 negotiations that cost caps applicable to members of Subclass B (stated as $3500 per year for individuals not eligible for Medicare and $1900 per year for individuals eligible for Medicare) would be increased by 5% per year for each year of the insurance agreement reached in 1995, as plaintiffs contend?

    ❑ Yes.

    ❑ No. We find that the $3500/$1900 amounts were intended to be fixed at that level, as defendants contend.

**If you checked "Yes," answer question 12. If you checked "No," go to question 15 on page 6.**

12. Do you, the jury, find that the Company violated the rights of Subclass B by failing to increase the $3500/$1900 caps by 5% for each year of the 1995 Agreement, as plaintiffs contend?

    ❑ Yes.

    ❑ No.

**If you checked "Yes," answer questions 13 <u>and</u> 14. If you checked "No," go to question 15 on page 6.**

13. What damages do you find for this contract violation for members of Subclass B who have paid these premiums?

    ❑ We find damages for each member of Subclass B who retired on or after May 1, 1995, in the amount of the difference between the premiums that each of them paid based on the fixed caps of $3500 / $1900, for each month they have paid such premiums, and the premiums that should have been charged to members of Subclass B based on the caps increased by 5% annually, plus interest. We further find those monthly amounts to be, as plaintiffs contend:

    |  | Single coverage | Family Coverage |
    | --- | --- | --- |
    | Retiree not eligible for Medicare | $80.58 | $186.83 in 2003<br><br>$282.04 in 2004 |
    | Retiree eligible for Medicare | $43.75 | $153.13 |

    ❑ Other: _____.

14. What damages do you find for members of Subclass B who have had their UHC coverage terminated because they did not pay all of the premiums required by the Company?

   **[You may check both A and B, or either one.]**

   ❏   **A.** We find damages for each class member whose UHC coverage was terminated in an amount equal to all of the premiums that the class member paid for any substitute insurance coverage, plus the amount of any medical and prescription expenses that would have been paid by UHC if the class member's coverage had not been terminated (minus any amounts that were paid for those expenses by any substitute insurance).

   ❏   **B.** We find that each class member should be entitled, at a minimum, to damages equal to the amount of money that Defendants would have been required to pay for that class member's insurance if the class member had continued paying the premiums that Defendants demanded.

5
Case 1:02-cv-00243-LHT   Document 133   Filed 07/06/04   Page 6 of 9

**Count Five:**

15. Do you, the jury, find that the Union and the Company agreed in 1995 for members of Subclass B who retired after May 1, 1995, that prescription co-payments would be counted toward the annual out-of-pocket maximum and that no co-payment would be charged for prescriptions after the annual out-of-pocket maximum was reached, as plaintiffs contend?

    ☐ Yes.

    ☐ No.

    **If you have answered "Yes" to question 15, answer question 16. If you have answered "No," go to question 18 on page 7.**

16. Do you, the jury, find that the Company violated the contract rights of these members of Subclass B by when it stopped taking account of prescription co-payments in applying the annual out-of-pocket maximum, as plaintiffs contend?

    ☐ Yes.

    ☐ No.

    **If you have answered "Yes" to question 16, answer question 17. If you have answered "No," go to question 18 on page 7.**

17. What damages do you find for these members of Subclass B for this contract violation?

    **[Check A or B, but not both.]**

    ☐ **A.** We find as the damages for those members of Subclass B who reached the annual out-of-pocket maximum in any year from 2000 through 2004, inclusive, or who would have reached the out-of-pocket maximum in any year from 2000 through 2004, inclusive, if prescription co-payments had been counted, those amounts that any class member paid in excess of their annual out-of-pocket maximum and all prescription co-payments charged after the annual out-of-pocket maximum was reached or should have been reached.

    ☐ **B.** Other: _____ .

**Count Seven (If the Court wishes to submit this question for an advisory jury finding of fact):**

18. Do you, the jury, find that Mark IV, acting as plan administrator failed to make diligent efforts after closing the plant in 1998 to negotiate lower premiums under the UHC contract for the benefit of members of Subclass B, as Plaintiffs contend?

    ☐ Yes.

    ☐ No.

**Questions relating to defendants' statute of limitations defense:**

19. **For Subclass A:** Do you, the jury, find that the Company clearly and unmistakably breached its contract with the Union before it actually began to charge premiums to members of Subclass A in 1999?

    **[Check A or B, but not both]**

    ☐   We find, as plaintiffs contend, that the Company did not clearly and unmistakably breach its contract with the Union until it actually began to charge premiums to members of Subclass A in 1999.

    ☐   We find, as defendants contend, that the Company clearly and unmistakably breached its contract with the Union before it actually began to charge premiums to members of Subclass A in 1999.

20. **For Subclass B:** Do you, the jury, find that the Company clearly and unmistakably breached its contract with the Union before 2001, when it actually began to charge premiums to members of Subclass B?

    **[Check A or B, but not both]**

    ☐   We find, as plaintiffs contend, that the Company did not clearly and unmistakably breach its contract with the Union before it began to actually charge premiums to members of Subclass B in 2001.

    ☐   We find, as defendants contend, that the Company clearly and unmistakably breached its contract with the Union before it actually began to charge premiums to members of Subclass B.