LHT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILED
ASHEVILLE, N. C.
JUL - 6 2004
U.S. DISTRICT COURT
W. DIST. OF N. C.

| | |
|---|---|
| JERRY TRULL, et al., | ) |
| | ) |
| Plaintiffs | ) Civil Action No. C 1:02-CV-243 |
| | ) |
| v. | ) |
| | ) Hon. Lacy H. Thornburg |
| DAYCO PRODUCTS, INC., et al., | ) |
| | ) |
| Defendants. | ) **CLASS ACTION** |
| | ) |

### Plaintiffs' Proposed Findings of Fact
### and Conclusions of Law (on Counts Two, Four, Six and Seven)

Based upon the controlling principles of law described in Plaintiffs' Trial Brief, and the anticipated evidence, Plaintiffs request that the Court enter the following Findings of Fact and Conclusions of Law after trial on the ERISA claims, which are not triable to the jury:

**Findings of Fact on Count Two (Subclass A):**

1. Consistent with the jury's verdict on the facts that are common to Counts One and Two, the Court finds that the Company and the Union intended to provide in their collectively bargained plans of retiree medical benefits that each member of Subclass A would have a contractual right to continue receiving for life at least the level of benefits that was in force on the date of retirement (except for surviving spouses, who would have the right to continue receiving those benefits until death or remarriage), and that those benefits are not subject to reduction after retirement.

1

2. The Court also finds that paragraph 3 of the Effects Bargaining Agreement (Joint Exhibit 54) explicitly provides that retiree medical benefits for all persons then retired from the Waynesville bargaining unit are preserved, and that such benefits therefore continue for life as previously promised, despite the expiration of all prior collective bargaining agreements. The Court further finds that these terms of the Effects Bargaining Agreement were not intended to expire and therefore remain in effect.

3. None of the documents material to plaintiffs' claims included a reservation by the Company of any right to reduce or terminate retirees' medical benefits after retirement.

4. The Court finds that the 1992 Memorandum of Agreement (Joint Exhibit 32) did not alter the rights to benefits of persons who had retired before July 1, 1992, and alternatively, that the caps it established on the Company's cost of providing retiree medical benefits became null and void when the plant closed.

**Conclusions of Law on Count Two (Subclass A):**

1. The collectively bargained plans of benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA") provide lifetime vested rights to all members of Subclass A (except surviving spouses, who are provided vested benefits until death or remarriage). Those vested benefits cannot be reduced after retirement.

2. The Company reduced benefits provided to members of Subclass A by requiring premium payments that were not authorized by the plans in effect at the time of each class member's retirement and therefore violated the terms of the plans and violated ERISA. Relief is available for those violations pursuant to Sections 502(a)(1) and (a)(3) of ERISA, 29 U.S.C.§§ 1132(a)(1) and (a)(3).

2

3. Plaintiffs Trull, Henson, and Sutton and other members of Subclass A who retired before May 2, 1994, or who retired after May 1, 1995 and elected to be treated as pre-Addendum retirees[1], are entitled to an order requiring restitution of all premiums they have paid for benefits, permanently enjoining defendants from charging any premiums for the benefits provided under the plans that were in effect at retirement, and permanently enjoining defendants from otherwise reducing such benefits. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

4. Members of Subclass A who retired between May 2, 1994, and May 1, 1995, are entitled to an order for restitution of all premiums paid in excess of $30 per month, permanently enjoining defendants from charging any premiums in excess of $30 per month for the benefits provided under the plan that was in effect at retirement, and permanently enjoining defendants from otherwise reducing such benefits. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

5. Members of Subclass A who have lost their medical coverage because they failed to pay the premiums demanded by defendants are entitled (in addition to the relief described in Conclusions 3 or 4, as applicable) to the retroactive reinstatement of that medical insurance, to restitution for any premiums they have paid for substitute insurance since their Dayco coverage was terminated, and to the payment (in accordance with the plans of benefits that were in effect at retirement) of claims that were incurred during the period for which their Dayco coverage was not in effect (to the extent that such claims were not reimbursed by substitute insurance). ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

---

[1] The 1992 Memorandum of Agreement is also referred to as the "Addendum."

6. In the event that there is a dispute that cannot be resolved by agreement between Plaintiffs and Defendants on the amounts of restitution to be paid to each class member under Conclusions of Law 3 through 5 or the processing of claims under Conclusion of Law No. 5, the Court will appoint a special master to oversee the resolution of such matters affecting relief.

7. Plaintiffs are also entitled to an award of attorneys' fees and litigation expenses for Count Two.

## Findings of Fact on Count Four (Subclass B):

1. Consistent with the jury's verdict on the facts that are common to Counts Three and Four, the Court finds that the Company and the Union intended to provide in their collectively bargained plans of retiree medical benefits that each member of Subclass B would have a contractual right to continue receiving for life at least the benefits that were in force on the date of retirement (except for surviving spouses, who would have the right to continue receiving those benefits until death or remarriage), and that those benefits are not subject to reduction after retirement.

2. The Court also finds that paragraph 3 of the Effects Bargaining Agreement (Joint Exhibit 54) explicitly provides that retiree medical benefits for all persons then retired from the Waynesville bargaining unit or to be retired thereafter are preserved, and that such benefits therefore continue for life as previously promised, despite the expiration of all prior collective bargaining agreements. The Court further finds that these terms of the Effects Bargaining Agreement were not intended to expire and therefore remain in effect.

3. None of the documents material to plaintiffs' claims included a reservation by the Company of any right to reduce or terminate retirees' medical benefits after retirement.

4. The Court finds that the FASB caps described in the 1992 Memorandum of Agreement (Joint Exhibit 32) became null and void when the plant closed, and that members of Subclass B who retired between May 2, 1994, and May 1, 1995, cannot be required to pay more than $30 per month for the benefits provided under the plan that was in effect when they retired.

5. The Court further finds that the Company and the Union intended that the FASB caps in the 1995 Group Benefits Agreement for members of Subclass B retiring on or after May 1, 1995, would never result in actual premium charges to retirees.

6. [Alternative to Proposed Finding No. 5] The Court further finds that the FASB caps that were established in 1995 collective bargaining for members of Subclass B retiring on or after May 1, 1995, were intended by the Company and the Union to be $3500 for retirees not eligible for Medicare and $1900 for retirees eligible for Medicare, increased in each case by 5% for each year of the five-year agreement beginning May 1, 1995.

7. [If the Court enters Proposed Finding No. 6] The Court further finds that the Company was obligated to pay the following amounts in years 2000 and after, including the 5% increases pursuant to Finding of Fact No. 6:

|  | Single coverage | Family Coverage |
|---|---|---|
| Retiree not eligible for Medicare | $4,467 per year | $15,634 per year |
| Retiree eligible for Medicare | $2,425 per year | $8,487 per year |

8. The Court also finds that in a letter dated May 1, 1995 (Joint Exhibit 44), the Company undertook a contractual obligation that if the Company granted cap increases to any other Dayco retirees, it would give the same cap increase to those retiring at Waynesville under the 1995 Group Benefits Agreement. That letter was retained as "active" in the Effects Bargaining Agreement. There is no evidence that the Company has increased caps applicable to other Dayco retirees as of the present, but if it should do so in the future, it will be required to increase the caps applicable to members of Subclass B who retired under the 1995 Group Benefits Agreement.

## Conclusions of Law on Count Three (Subclass B):

1. The plans of benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA") provide lifetime vested benefits to all

6

members of Subclass B (except surviving spouses, who are entitled to vested benefits until death or remarriage). Those benefits cannot be reduced after retirement.

2. The Company reduced benefits provided to members of Subclass B by requiring premium payments that were not authorized by the plans in effect at the time of each class member's retirement, and therefore violated the terms of the plans and violated ERISA. Relief for those violations is available pursuant to Sections 502(a)(1) and (a)(3) of ERISA, 29 U.S.C.§§ 1132(a)(1) and (a)(3).

3. Members of Subclass B who retired between May 2, 1994, and May 1, 1995, are entitled to an order requiring restitution of all premiums they have paid in excess of $30 per month, permanently enjoining defendants from charging any premiums in excess of $30 per month for the benefits provided under the plan that was in effect at retirement, and permanently enjoining defendants from otherwise reducing such benefits. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

4. [If the Court has entered Proposed Finding of Fact No. 5] Plaintiffs Johnson, Rogers, and Riggs and the other members of Subclass B are entitled to an order requiring restitution of all premiums they have paid, permanently enjoining defendants from charging any premiums for the benefits provided under the 1995 Benefits Agreement and permanently enjoining defendants from otherwise reducing such benefits. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

5. [If the Court has entered Proposed Finding of Fact No. 6] Plaintiffs Johnson, Rogers, and Riggs and the other members of Subclass B are entitled to an order for restitution of all premiums they have paid in excess of the amounts they would have been charged if the agreed-upon 5% increase had been applied for each year of the 1995 Agreement (as

Case 1:02-cv-00243-LHT   Document 134   Filed 07/06/04   Page 7 of 17

identified in Finding No. 7)[2]. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. §
1132(a)(1)(B), (a)(3)(B).

6. [If the Court has entered Proposed Finding of Fact No. 6] Plaintiffs Johnson, Rogers, and
Riggs and the other members of Subclass A are also entitled to an order permanently
enjoining defendants from charging any premiums for the benefits provided under the 1995
Benefits Agreement in excess of the amounts that would have been charged if the agreed-
upon 5% increase had been applied for each year of the 1995 Agreement (as identified in
Finding No. 7),[3] and permanently enjoining defendants from otherwise reducing such
benefits. ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

7. Members of Subclass B who have lost their medical coverage because they failed to pay the
premiums demanded by defendants are entitled (in addition to the restitution provided in
Conclusions of Law 3, 4, or 5, as may be applicable) to the retroactive reinstatement of that
medical insurance, to restitution for any premiums they have paid for substitute insurance
since their Dayco coverage was terminated, and to the payment (in accordance with the plans
of benefits that were in effect at retirement) of claims that were incurred during the period for
which their Dayco coverage was not in effect (to the extent that such claims were not
reimbursed by substitute insurance). ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. §
1132(a)(1)(B), (a)(3)(B).

---

[2] The amounts in Finding No. 7 reflect the current structure of the United Health Care ("UHC")
premiums, under which family coverage costs 3.5 times the cost of single coverage. In the event
that structure should change in the future, the cap should be adjusted so that the family cap bears
the same relationship to the single cap that the UHC family premium bears to the UHC single
premium.

[3] Subject to the same qualification stated in Footnote 2.

Case 1:02-cv-00243-LHT    Document 134    Filed 07/06/04    Page 8 of 17

8. Each member of Subclass B whose coverage was terminated for failure to pay premiums should receive, at a minimum, an award equal to the amount of money that Defendants would have been required to pay for that class member's medical coverage if the coverage had remained in effect.

9. In the event that there is a dispute that cannot be resolved by agreement between Plaintiffs and Defendants on the amounts of restitution to be paid to each class member under Conclusions of Law Nos. 3-8 or the processing of claims to be paid under Conclusion of Law No. 7, the Court will appoint a special master to oversee the resolution of such matters affecting relief.

10. The Court further declares that under the May 1, 1995, letter (Joint Exhibit 44), the Company will be obligated to provide to members of Subclass B who retired under the 1995 Group Benefits Agreement any cap increases that it provides to other Dayco retirees.

11. Plaintiffs are also entitled to an award of attorneys' fees and litigation expenses for Count Four.

## Findings of Fact on Count Six (Subclass B):

1. Consistent with the jury's verdict on the issues of fact that are common to Counts Five and Six, the Court finds that the Union and the Company agreed in 1995 for members of Subclass B who are or were provided medical benefits through UHC that prescription co-payments would be counted toward the annual out-of-pocket maximum and that no co-payment would be charged for prescriptions after the annual out-of-pocket maximum was reached.

2. The Court finds that the plan of benefits applicable to these members of Subclass B therefore provided that prescription co-payments would be counted toward the annual out-of-pocket maximum and that no co-payment would be charged for prescriptions after the annual out-of-pocket maximum was reached.

3. None of the documents material to plaintiffs' claims included a reservation by the Company of any right to change retirees' medical benefits after retirement.

## Conclusions of Law on Count Five (Subclass B):

1. Defendants violated the terms of the ERISA plan when they changed the plan of benefits beginning in 2000 and stopped counting prescription co-payments toward satisfaction of the annual out-of-pocket maximum and stopped providing prescriptions without a co-payment after the annual out-of-pocket maximum was reached. Relief is available for that violation pursuant to Sections 502(a)(1) and (a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(1) and (a)(3).

2. Members of Subclass B who are or were covered under UHC are entitled to an order permanently enjoining defendants from failing or refusing to count prescription co-payments toward satisfaction of the annual out-of-pocket maximum and requiring defendants to provide prescriptions without a co-payment after the annual out-of-pocket maximum is reached.

10

3. Members of Subclass B who are or were covered by UHC and who reached the annual out-of-pocket maximum in any year from 2000 through 2004, inclusive, or who would have reached the out-of-pocket maximum in any of those years if prescription co-payments had been counted, are entitled to an award of the benefits they were entitled to receive under the Plan, i.e., the amounts that any class member paid in excess of the annual out-of-pocket maximum including all amounts paid as prescription co-payments after the annual out-of-pocket maximum was reached or should have been reached. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

4. In the event that there is a dispute that cannot be resolved by agreement between Plaintiffs and Defendants on the amounts of restitution to be paid to each class member under Conclusion of Law No. 3, the Court will appoint a special master to oversee the resolution of such matters affecting relief.

5. Plaintiffs are also entitled to an award of attorneys' fees and litigation expenses for Count Six.

## Findings of Fact on Count Seven (Subclass B):

1.  The Court finds that defendant Mark IV Industries, Inc. ("Mark IV") is the Plan Administrator of the plan of benefits provided to members of Subclass B.

2.  The Court finds that Plaintiffs have established by a preponderance of evidence that plan sponsors motivated to control increases in premiums for insured health coverage do not generally accept the rate increases quoted by an existing insurer but generally request experience data underlying the proposed rate increase and generally attempt to negotiate lower rates.

3.  The Court finds that defendant Mark IV received some experience data and made some efforts to negotiate lower premium increases for the insured coverage provided by UHC to Subclass B during periods of time when Mark IV knew that it have to would absorb the entire premium increase, but failed to make such attempts to control UHC's premium increases when it expected that members of Subclass B would pay such premium increases.

4.  The Court finds that the reasons offered by Mark IV for its failure to request experience data and its failure to attempt to negotiate lower premium increases with UHC were not credible explanations of its failure, or were not consistent with the exercise of due diligence in matters affecting the participants in the UHC-insured plan.

5.  The Court finds that Mark IV's failure to exercise due diligence may have been motivated by the savings it would realize, in the amount of annual premiums up to the applicable cap, on every class member who dropped the UHC coverage for inability to pay premiums demanded by Mark IV.

## Conclusions of Law on Count Seven (Subclass B):

12

1. The Court concluded in its Order dated June 21, 2004, that Mark IV acted in a fiduciary capacity in the negotiation of insurance contracts to implement the plan of medical benefits that was specified under the terms of the 1995 group benefits agreement, in subsequently determining whether the insurance carrier (UHC) should be continued in that capacity or should be removed, and in subsequently determining whether to accept the rates that UHC quoted for renewal. Because the cost caps in the 1995 Agreement exposed participants and beneficiaries to the risk of having to pay any excess of the UHC premiums over those caps, defendant Mark IV owed those participants and beneficiaries the fiduciary duties of prudence, diligence, and loyalty to monitor proposed premium increases and attempt to control them in the best interest of the participants and beneficiaries. ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

2. Mark IV's failure to make efforts to control the UHC rate increases of the type of efforts that are commonly made by plan sponsors and plan administrators to control increases in insured medical costs constituted a failure to act prudently, diligently, and in the best interest of participants and beneficiaries.

3. Mark IV thus violated its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

4. As relief for this violation of ERISA fiduciary duties, the members of Subclass B who are covered by UHC are entitled to an order permanently enjoining Mark IV as Plan Administrator from charging premiums for costs above any applicable cap unless and until Defendant Mark IV has fulfilled its fiduciary duty to make a diligent effort to negotiate with UHC for the lowest premiums consistent with the plan design specified in the 1995 group

13

benefits agreement and with quality of medical care. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

5. Members of Subclass B who are covered by UHC are also entitled to an order for restitution of all premiums they have paid to maintain medical insurance for themselves and their dependents for all periods when Defendant Mark IV had failed to fulfill its fiduciary duty, namely, for all periods for which they have paid premiums to date. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

6. Members of Subclass B who were covered by UHC but whose insurance has been terminated for failure to pay the premiums demanded by Defendants are entitled (in addition to the relief provided in Conclusion of Law 5) to retroactive reinstatement of that medical insurance, to restitution for any premiums they have paid for substitute insurance, and to the payment (in accordance with the plan of benefits in the 1995 Group Benefits Agreement) of claims that were incurred during the period for which their Dayco coverage was not in effect (to the extent that such claims were not reimbursed by substitute insurance). ERISA Section 502(a)(1)(B), (a)(3)(B); 29 U.S.C. § 1132(a)(1)(B), (a)(3)(B).

7. In the event that there is a dispute that cannot be resolved by agreement between Plaintiffs and Defendants on the amounts of restitution to be paid to each class member or the processing of claims to be paid under Conclusion of Law No. 6, the Court will appoint a special master to oversee the resolution of such matters affecting relief.

8. Plaintiffs are also entitled to an award of attorneys' fees and litigation expenses for Count Seven.

14

## Findings of Fact Pertaining to Defendants' Statute of Limitations Defense

1. With reference to the claims of Subclass A, consistent with the verdict of the jury, the Court finds that the Defendants did not clearly and unequivocally repudiate its obligation under the contracts with the Union when it sent letters to retirees in 1992 or in 1994 announcing that the Company had "imposed caps" on the amount it would pay for their medical coverage. The Company had repeatedly assured the Union and the Union membership in 1992 that the "caps" were solely for bookkeeping purposes, would be negotiated upward if they were ever reached, and would not actually result in charging premiums to any retirees. The Company acted consistently with those assurances in 1994 when the letters it sent to certain retirees informed them that the caps had been exceeded but that the Company had adjusted the caps upward so that no premiums would be charged.

2. From these facts, the Court finds that it reasonably appeared to the Union and the class members based upon the objective facts that the Company was continuing to maintain these caps for bookkeeping purposes only and that it did not intend actually to charge any retirees premiums. As long as no premium was actually charged, there was no clear and unequivocal breach of the contracts.

3. The Court also finds that counsel for the Union promptly advised the Company that if it did charge premiums to any retirees the Union would take action to enforce its contracts. The Company therefore suffered no prejudice from the fact that the Union did not institute an enforcement action until the Company actually began to charge premiums.

## Conclusions of Law Pertaining to Defendants' Statute of Limitations Defense

1. The statute of limitations applicable to Counts Two, Four, and Six is the Ohio period for enforcement of written contracts, which is fifteen years.

15

2. The claims of Subclass A in Count Two did not accrue until February 1999 when the Defendants first sent letters to class members demanding that they pay premiums.

3. The claims of Subclass B in Count Four did not accrue until November 2001 when the Defendants first sent letters to class members demanding that they pay premiums.

4. The claims of Subclass B in Count Six did not accrue until January 2000 at the earliest, when the Defendants changed the terms of the prescription coverage under UHC.

5. The Court concludes, therefore, that the claims in Counts Two, Four, and Six are not barred by the applicable statute of limitations.

6. The statute of limitations for breach of fiduciary duty under ERISA is the earlier of six years after the date of the last action which constituted a part of the breach of violation or three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation. ERISA § 413, 29 U.S.C. § 1113.

7. The last action which constituted a part of the breach or violation occurred as recently as late 2003, when Mark IV failed to negotiate with UHC for lower premium rates for the year 2004 and instead passed on the full rate increases requested by UHC to Subclass B.

8. Defendants have the burden of proving actual knowledge of the plaintiffs at an earlier date for the purpose of establishing an earlier date of accrual of the plaintiffs' claims. They have produced no such evidence.

9. The Court concludes, therefore, that the claim in Count Seven is not barred by ERISA's statute of limitations for breach of fiduciary duty.

16

WHEREFORE, plaintiffs respectfully request entry of these Findings of Fact and Conclusions of Law.

Respectfully submitted,

Julia Penny Clark
Maryann Parker
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C. 20005-2207
(202) 842-2600

C. Frank Goldsmith, Jr.
Goldsmith, Goldsmith & Dews, P.A.
P.O. Box 1107
Marion, North Carolina 28752

Attorneys for Plaintiffs