# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

**CIVIL NO. 1:02CV243**

| | |
|---|---|
| JERRY TRULL; DON HENSON; FLOYD SUTTON; EARL JOHNSON; RODERICK ROGERS; and JOYCE RIGGS, Individually and as Representative of a class of all persons similarly situated,<br><br>**Plaintiffs,**<br><br>Vs.<br><br>DAYCO PRODUCTS, LLC; MARK IV INDUSTRIES, INC.; DAYCO PRODUCTS, INC. MEDICAL PLAN; and MARK IV INDUSTRIES, INC. AND SUBSIDIARIES GROUP WELFARE BENEFIT PROGRAM,<br><br>**Defendants.** | **O R D E R** |

**THIS MATTER** is before the Court on the Defendants' Objections, Request to Certify, and Request for Clarification and/or Reconsideration with Respect to the Court's April 26, 2005 Order.

In that Order, the undersigned noted the following:

> By jury verdict returned August 3, 2004, it was determined that the members of the above-captioned class action who fall within Subclass B are entitled to vested, lifetime medical benefits at the level of benefits in existence at the dates of retirement. However, it was also determined that the Defendants' obligation to pay insurance premiums was subject to an annual cap depending on the date of retirement of subclass members.
> 
> . . .

> During the pendency of the action, the parties agreed that for the time period between January 1, 2002, through September 30, 2003, Dayco would not require payments by members of Subclass B of those insurance premiums exceeding the annual caps. Beginning in October 2003, that agreement terminated and members of the Subclass began to make payments to Dayco of those insurance premiums which exceeded the annual caps. However, as a result of further litigation and a stipulated order entered between the parties in December 2004, Dayco has not to date enforced collection of the deferred premiums for the 21-month period, although some members may have voluntarily begun repayment.
>
> . . .
>
> The terms of the stipulated order entered into by the parties in December 2004 provided that Dayco would not collect any interest on the deferred premiums and would make no effort to collect these deferred premiums until May 1, 2005.

**Order, filed April 26, 2005, at 1-3.** In anticipation of that deadline, Dayco sent letters to the members of the subclass providing them with options for making repayment. Prior to that time, the parties, according to their reports, had engaged in extensive mediation in an attempt to structure a repayment method and schedule, among other things, but were ultimately unsuccessful in resolving any issues. As a result, when Dayco sent out the letters, the Plaintiffs came back into Court seeking a preliminary injunction. In the April 2005 Order, the undersigned opted to rely on its inherent powers to preclude collection procedures pending an investigation of post-trial issues by a special master. In what has become a routine procedure, Defendants now move for reconsideration, objecting to the appointment of a special master because the Court has run afoul of Federal Rule of Civil Procedure 53, and request certification for appeal.

In a Memorandum and Order filed October 8, 2004, the undersigned alerted the parties that the appointment of a special master was under consideration as to the post-trial issue of individual class damages. Defendants objected to the possibility of such an appointment by moving for reconsideration of that Order, stating that the "Court has now offered Plaintiffs' a third opportunity to prove their damages by means of a special master procedure." **Brief in**

**Support of Defendants' Motion for Reconsideration of the Court's October 8, 2004 Memorandum and Order, filed October 25, 2004, at 1, 4 ("[T]he Court indicated that it 'may appoint a Special Master to resolve any differences' regarding the verification of the Plaintiffs' alleged damages.").**

Because the parties requested an opportunity to mediate, the Court made no further pursuit of the issue. However, when the Plaintiffs moved for a preliminary injunction, the case came before the Court, once again, for immediate relief.

At issue is the manner of implementing the jury verdict rendered in August 2004. The Court has repeatedly ruled that the jury verdict is clear and damages for the class should be imposed. Defendants, on the other hand, continue to argue that the issue of damages has never been tried to the jury and, therefore, no damages may be awarded. In the most recent motion, they incorporate the previous motion, stating that "[f]or the reasons set forth in Defendants' Motion for Reconsideration, docket no. 193, dated October 25, 2004, Defendants object to having this case referred to a special master for purposes of assessing damages."[1] **Defendants' Objections,** *supra*, **at 1.**

According to the Defendants, the Court has no authority to use the services of a special master to provide notice and proof of claim forms to members of the class for the individual damages claims. Despite the Court's ruling on October 8, 2004, Defendants continue to argue

---

[1]The Court is not in the habit of revisiting every motion ever filed in an action based on a party's bootstrapping of the same into each new motion. Such conduct has the vestiges of violating 28 U.S.C. § 1927 which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

the same point.[2] In particular, Defendants now claim this Court has no jurisdiction to determine a reasonable repayment schedule of the deferred insurance premiums. "Neither the pleadings in the case nor the All Writs Act provides any basis for the Court to become involved in how and when Subclass B members satisfy their debts to Defendants[.]" ***Id.*, at 1-2.** Thus, they once again request reconsideration, clarification, and certification for an immediate appeal.[3]

Because the jury determined that Subclass B was subject to an annual cap of insurance premiums over which the Defendants would not be obligated to pay, the verdict of necessity meant that the members of the subclass would have to repay those premiums which had been deferred for the period between January 2002 and September 2003. The parties acknowledged this very issue by taking it, along with other issues, to mediation. Nonetheless, Defendants now argue that the Court has no authority to appoint a special master to deal with this issue, claiming it has never been litigated in the case. "[T]he contract documents do not contain any obligation on the part of the Company to allow a 'reasonable time' for repayment of amounts owed by Subclass B[.]" *Id.* And, Defendants, referring back to their October 2004 motion, claim the Court has violated the procedural requirements of Federal Rule of Civil Procedure 53.

Rule 53 provides, in pertinent part, that "a court may appoint a master only to . . . address . . . post-trial matters that cannot be addressed effectively and timely by an available district

---

[2]The Court there noted that it would use a procedure commonly used in class actions to require class members to submit proof of their individual damages, citing *Newburg on Class Actions*. Rather than accepting this ruling as the law of the case, Defendants continue to insist that no jury verdict has ever been rendered on the issue of damages. Again, such conduct goes beyond zealous advocacy and crosses over the border into the realm of vexatiously multiplying the proceedings.

[3]The request for certification is unusual in that the Defendants simultaneously state that no such certification is necessary.

judge . . . of the district." **Fed. R. Civ. P. 53(a)(1)(C)**. The Rule also provides that the parties must be given notice and an opportunity to be heard on the issue. **Fed. R. Civ. P. 53(b)(1)**. The Court's previous Order in October 2004 provided such notice and the Defendants have amply responded to the issue.

However, Defendants erroneously concluded that the Court appointed a special master pursuant to Rule 53 instead of pursuant to its inherent powers.

> It is well settled in the law that federal courts have the inherent power to appoint an agent to oversee the implementation of its [] decrees. Indeed, this "court has an affirmative duty to protect the integrity of its decree. *This duty arises where the performance of one party threatens to frustrate the purpose of the decree*." While Federal Rule of Civil Procedure 53(b) requires that the appointment of a special master be the exception rather than the rule, it does not "terminate or modify the district court's inherent equitable power to appoint a person . . . to assist it in administering a remedy." Rather, "[b]eyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a federal district court has the inherent power to supply itself with [a special master] for the administration of justice when deemed by it essential."

*United States v. Connecticut*, 931 F. Supp. 974, 984 (D. Conn. 1996) (quoting *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985) and *Ruiz v. Estelle*, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982)) (collecting cases). As previously noted by the undersigned, the appointment of the master in this case is necessary to implement the jury verdict. *Id.*; *accord, Cronin v. Browner*, 90 F.Supp.2d 364, 377 (S.D.N.Y. 2000) ("However, there is considerable room for **appointing special masters when the purpose of the master is to enforce a judicial decree.**"). Inherent in the jury verdict is a finding that the members of the subclass owe for past due premiums. It is thus within the Court's jurisdiction to fashion, as part of the relief in this action,

the manner in which those premiums are repaid.⁴  **Revisions in Federal Rule 53 Provide New Options for Using Special Masters in Litigation, 76-Jan. N.Y.St.B.J. 18, 21 n.28 (2004) ("The practice of using special masters after liability has been established stems from the use of masters in equity.").**  Failure to do so may result in the cancellation of insurance for class members who are unable to make the payment in the manner and amount demanded by the Defendants, a threat which has already been made.  *Id.*, **at 22 ("No exceptional condition finding is required [pursuant to Rule 53] as had previously been true[.] . . . Reference to a special master to oversee complex decrees is also appropriate, particularly when a party has proved to be resistant or intransigent.");** *United States v. Connecticut, supra* **(A "court has an affirmative duty to protect the integrity of its decree.  *This duty arises where the performance of one party threatens to frustrate the purpose of the decree.*").**  Cancellation of insurance, of course, would totally frustrate the jury verdict declaring that these same members are entitled to lifetime insurance benefits.  *Berger, supra* **(The need to protect the integrity of the jury verdict "justifies any reasonable action taken by the court to secure compliance.").**

The Court has previously noted that since the jury's verdict, "it has been the consistent intent of the Court to resolve this litigation so that relief could be provided to the class

---

⁴Indeed, the Defendants acknowledge that depending on the ruling on the ERISA portion of the action, they may in fact owe additional sums to the subclass members.  It is, therefore, well within the Court's prerogative to forestall collection now of sums which may only have to be reimbursed.  Moreover, the master has been asked to render a report as to the total owed by each member, a fact which will be of great assistance in the final implementation of the verdict.  **Revisions in Federal Rule 53 Provide New Options for Using Special Masters in Litigation, 76-Jan. N.Y.St.B.J. 18, 21 (2004).**  "[S]pecial masters have been appointed to oversee issues arising after trial.  In these situations, the issues referred to masters primarily involved crafting and overseeing the remedial stage of litigation." *Id.*

members." **Order, filed April 26, 2005, at 6.** The resources of this Court should now be focused on the final aspect of this case which remains pending, the ERISA claim of the complaint. Time which is expended in ruling on repeated motions to reconsider is not well spent. "Neither the time of the court nor the litigants should be taken up with establishing that which has already been overwhelmingly established. This litigation was begun in [2002], and the class members are entitled to [recover their jury award] while they are still in a position to enjoy it." *McLendon v. Continental Group, Inc.*, **749 F. Supp. 582, 612 (D.N.J. 1989),** *aff'd*, **908 F.2d 1171 (3d Cir. 1990);** *see also, Hemelt v. United States*, **122 F.3d 204, 206 (4th Cir. 1997) (citing** *McLendon***).**

      **IT IS, THEREFORE, ORDERED** that the Defendants' objections, request for clarification and/or reconsideration, and request to certify for appeal are hereby **DENIED**;

      **IT IS FURTHER ORDERED** that the Defendants' motion with respect to attorneys' fees is hereby **DENIED** as moot;

      **IT IS FURTHER ORDERED** that the Special Master shall, in addition to the duties outlined in the Order of April 26, 2005; comply with the following:

1. The Special Master shall file with the Court an affidavit attesting that he does not have a relationship to the parties, counsel, this action or this Court that would require disqualification of a judge pursuant to 28 U.S.C. § 455;

2. Upon the completion of his report, the Special Master shall serve a copy of the report on counsel for the parties and shall file a copy with the Court;

3. The Special Master may in his discretion engage in *ex parte* communications concerning the subject matter of his duties with either the parties or the attorneys;

4. The Special Master shall endeavor to complete his duties on or before 90 days from entry of this Order but may request additional time if necessary.

**IT IS FURTHER ORDERED** that upon the filing of the affidavit of the Special Master, this Order and the Order filed on April 26, 2005, shall be deemed refiled as of a time after the filing of the affidavit; and

**IT IS FURTHER ORDERED** that on or before 15 days after filing of the Special Master's Report, the parties may, but are not required, file objections to any portion thereof which must be specifically stated and may also file any objection to the fees, costs and expenses of the Special Master.

**Signed: June 1, 2005**

Lacy H. Thornburg
United States District Judge